IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO.  5:10-CV-133-DCK

| | |
|---|---|
| KEN E. CHURCH and<br>KEN E. CHURCH ENTERPRISES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>HOME FASHIONS INTERNATIONAL, LLC<br><br>Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)      **ORDER**<br>)<br>)<br>)<br>)<br>) |

THIS MATTER IS BEFORE THE COURT on Defendant's "Notice Of Motion [For Summary Judgment]" (Document No. 27) and "Plaintiffs' Motion For Summary Judgment" (Document No. 28).  The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are now ripe for disposition.  Having carefully considered the motions, the record, and applicable authority, the undersigned will deny Defendant's motion, and grant in part and deny in part Plaintiffs' motion.

## I.  BACKGROUND

### A.  Statement Of Facts

Ken E. Church ("Plaintiff" or "Church") was hired by Home Fashions International, LLC ("Defendant" or "HFI")  in January 2008 as "a contract agent tied exclusively to" Westgate Home Fashions ("WHF"), a trade name of Defendant, an affiliate of American Decorative Fabrics, LLC ("ADF").  (Document Nos. 2-1, 27-1, 28-1).  Specifically, Tom Carter ("Carter") a representative of ADF, and president of WHF, recruited Plaintiff and confirmed the terms of Plaintiff's employment in an email dated January 17, 2008 (the "Agreement").  (Document No. 27-1, p.1; Document No. 28-1, p.20).  The email from Carter with a subject line of "Agreement with ADF"

included the following:

My sincerest apologies for not getting this in writing to you sooner. . . . I have outlined below the agreement for your records.

Short-Term Compensation guarantee of 10,000.00 per month for a period of 18 months.
An additional health insurance/disability payment of 12,000 annually to be paid 1,000.00 per month for 18 months.
You will receive a check once a month for 11,000.00.

Expenses
All expenses are to be covered by ADF including travel miles (excluding travel from home to office)
. . .
An office (when we lease/purchase building) will be supplied to you by ADF

Job Outline
Your role would be that of a contract agent tied exclusively to WHF in charge of sales and key account management.
You would manage additional sales representation and or key-account executives.
You would be responsible for the compensation of any support personnel you would need in order to run your sales organization. (i.e. assistant, etc.)
We would confer and agree on any support personnel decisions.
As discussed, you will be heavily involved in all product decisions, company direction, marketing efforts, etc.

Long-Term Compensation
Commissions
Commissions will be based on profitability of the items sold. Commissions should range from 2% to 5% based on gross margin.
You will receive an over-ride ranging from .5% to 1% for any "key account executives" you hire based on the profitability of the account.
The profitability of the account is based on the average gross margin of the units sold and can be adjusted based on fluctuations in product assortment.

(Document No. 28-1, p.19).

2

In addition, an article in *Furniture Today*, dated March 24, 2008, provided in pertinent part that "David Li, owner and CEO of HFI, a $160 million company based in Shanghai, has named Tom Carter president of Westgate and has hired industry veteran Ken Church to head sales, marketing and customer relations for the upholstery line." (Document No. 28-1, p.20). David Li ("Li")was quoted as saying "I'm very excited to have Carter and Church launch and lead my furniture business...." Id. On April 30, 2012, the parties filed "Stipulations" (Document No. 23) which included a statement affirming the parties' January 2008 employment agreement: "Defendant agreed to pay Ken E. Church a guaranteed compensation of $10,000.00 per month, plus $1,000.00 a month for health insurance/disability for 18 months. Part of his compensation also included reimbursing Ken E. Church for his expenses, excluding travel from home to office." (Document No. 23, p.1).

Soon after being hired, and pursuant to the recommendation of Carter, Plaintiff set up Ken E. Church Enterprises, LLC. (Document No. 27-2, p.17; Document No. 28-2, p.6). The parties have stipulated that Plaintiff assigned his right for payment of any and all compensation to Ken E. Church Enterprises, LLC, without objection from Defendant, and that Ken E. Church Enterprises, LLC was properly joined to this lawsuit with Defendant's consent. (Document No. 23, p.1).

Plaintiff anticipated that he would be helping in all areas of Westgate's furniture division and would take instructions from Carter and Li, or other upper management employees with HFI. (Document No. 29, p.2; Document No. 28-2, p.2). Apparently, Carter indicated to Plaintiff that he would lead the sales, marketing and customer relations divisions of HFI, and that Carter would depend on him for advice and assistance in all areas of manufacturing and furniture sales. (Document No. 29, p.2; Document No. 28-2, pp.1-3).

During the first 11-12 months of his employment with HFI, Plaintiff reported to Carter and

saw him almost daily in an office provided by Carter in downtown Hickory, North Carolina. (Document No. 27-2, p.15; Document No. 28-2, p.6). Carter acknowledges in his testimony that Plaintiff worked in Hickory for HFI, and that he worked with him there for a time. (Document No. 28-1, p.10). Carter could not exactly recall how often Church was in the Hickory office, but suggested it was weekly. Id.

Plaintiff had to have his travel approved by Carter, and pursuant to the Agreement he would have to "confer and agree on any support personnel decisions." (Document No. 27-2, p.16; Document No. 28-1, p.19; Document No. 28-2, p.14). Plaintiff contends in his affidavit, and Defendant has failed to refute, that he participated in a wide variety of duties and responsibilities unrelated to sales, all under Carter's direction. (Document No. 28-2, pp.3-5; Document No. 29, p.3).

According to Defendant, "[t]he Agreement remained in effect for 12 months, during which time, Defendant paid the foregoing $11,000 per month to Church LLC, except for the initial payment in the amount of $11,000 that was paid to Church, and reimbursed Church LLC for all of the travel expenses of Church as submitted and approved by Defendant." (Document No. 27-1, p.2; see also, Document No. 27-2, pp.25-26). In December 2008, Carter informed Plaintiff that Defendant intended to terminate Plaintiff, and/or at some point soon thereafter told him that there would be a new agreement that would supersede the parties' original Agreement. (Document No. 29, p.4; Document No. 28-2, p.5; Document No. 27-2, p.22).

Plaintiff has consistently asserted in his briefs, affidavits, and deposition testimony that he never received a proposal to change the terms of the Agreement and never agreed to change his compensation. (Document No. 29, p.4; Document No. 27-2, p.22; Document No. 28-2, p.5; Document No. 30, p.1). Plaintiff states in his most recent affidavit that he "was never terminated

4

by the Defendant or advised, either verbally or in writing, my compensation was changed." (Document No. 30, p.1). Defendant's motion for summary judgment contends that "[e]ffective January 1, 2009, Church and Defendant orally changed the Agreement by eliminating the guaranteed monthly amount of $10,000, by eliminating the monthly amount of $1,000 for medical/disability and agreeing to compensate Church on a commission basis only." (Document No. 27-1, pp.2-3). However, Defendant has offered no factual support for its contention that the parties "orally changed the Agreement." Id.

In or about January 2009, Carter's duties and responsibilities with HFI changed and he was ultimately terminated. (Document No. 29, p.4; Document No. 28-2, p.5). Plaintiff, however, continued to work for Defendant under the instruction and supervision of Jean Brown ("Brown"), who worked for HFI for over four years. Id. Brown was HFI's Chief Operating Officer, and worked on a daily basis with Plaintiff. (Document No. 28-4). She "assumed he was an employee for HFI and not an independent contractor" and "treated him like a management level employee." Id. While working with Brown, Plaintiff's duties and responsibilities "included a wide variety of management level responsibilities that were more than sales and marketing related duties." Id. "During the approximate 6 months [Brown] worked with Ken Church on a full time basis, [she] was aware he was not being paid the guaranteed salary that HFI agreed to pay him" and she "attempted on several occasions to get him paid, but [she] was unsuccessful." Id.

On or about July 7, 2009, after 18 months working with Defendant, Plaintiff became Chief Operating Officer of the Lake Hickory Country Club. (Document No. 29, p.5; Document No. 27-2, p.32; Document No. 28-2, pp.5-6). Plaintiff continued some sales duties and responsibilities related to the furniture division up until the spring market of 2010, when he terminated his involvement with HFI. (Document No. 29, p.5; Document No. 28-2, pp.6). Defendant contends that it paid all

5

of the commissions earned by Plaintiff to Church LLC through February 2010, and that its furniture manufacturing business was soon thereafter terminated.  (Document No. 27-1, p.3).

**B. Procedural History**

Plaintiff filed his "Complaint" (Document No. 2-1) against Defendant on August 11, 2010, in the Superior Court of Caldwell County, North Carolina.  The Complaint asserts causes of action for breach of contract and violation of the North Carolina Wage and Hour Act, N.C.Gen.Stat. § 95-25.1 *et seq*.  (Document No. 2-1).  Defendant filed a "Notice Of Removal" (Document No. 2) with this Court on September 9, 2010.

On October 15, 2010, the parties filed their certification of initial attorney's conference and consent to jurisdiction of a United States magistrate judge.  (Document Nos. 5 and 6).  The undersigned issued a "Pretrial Order And Case Management Plan" (Document No. 7) on October 18, 2010.  The "Pretrial Order..." included the following deadlines:  discovery - July 13, 2011; mediation - August 1, 2011;  motions - August 15, 2011;  and trial - January 2012.  (Document No. 7).

Plaintiff's motion to join Ken E. Church Enterprises, LLC ("Church LLC") as a plaintiff in this matter, consented to by Defendant, was allowed on April 15, 2011.  (Document Nos. 9 and 10).  On July 26, 2011, Plaintiffs reported that the parties' attempt to mediate a settlement was unsuccessful.  (Document No. 11).

On November 2, 2011, nearly four (4) months after the discovery deadline and nearly three (3) months after the motions deadline, Defendant filed motions to compel discovery and to extend the discovery deadline.  (Document Nos. 11-13).  The motions for discovery were denied in part and granted in part, resulting in Plaintiff being allowed to conduct some limited discovery.  (Document No. 17).  The undersigned observes that in briefing the above motions Plaintiff failed to file a reply

6

brief, or notice of intent not to reply, and the Court thus cited Local Rule 7.1(E) which governs the time frames for filing responses to motions and for replies. Id.

On May 1, 2012, the undersigned held a Final Pretrial Conference in preparation for a trial on May 7, 2012. Based on that conference, as well as the parties' pretrial briefs, the undersigned found that this matter was not yet ripe for a jury trial. (Document No. 26). "Rather, it appears that there are legal issues to be considered by the Court that the parties only recently fully recognized, and that the Court may benefit from additional discovery and/or motions practice related to these questions of law." Id. The undersigned then revised the case deadlines, allowing each party to conduct a deposition (which neither side had done to date) and allowing the parties an extended period of time to file dispositive motions (which neither side had done to date either). Id. Trial was rescheduled for August 6, 2012. Id.

On June 14-15, 2012, the parties filed timely cross motions for summary judgment. (Document Nos. 27-28). Plaintiffs then filed a "...Memorandum Of Law In Opposition To Defendant's Motion For Summary Judgment" (Document No. 31) on July 2, 2012; and "Defendant's Reply..." (Document No. 32) was filed on July 11, 2012.

Defendant has failed to file any response to "Plaintiffs' Motion For Summary Judgment" (Document No. 28), or request an extension of time for such filing, and the time to do so has lapsed. See Local Rule 7.1 (E).[1] As such, the pending motions for summary judgment are now ripe for disposition.

---

[1] On or about July 11, 2012, Defendant's counsel sent a letter to the undersigned acknowledging that he had not filed, and did not intend to file, a response to Plaintiff's motion. (Document No. 33). Defendant's counsel suggests that Defendant's motion for summary judgment be considered as a response to Plaintiff's motion for summary judgment. Id.

## II. STANDARD OF REVIEW

The standard of review here is familiar. Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Only disputes between the parties over material facts (determined by reference to the substantive law) that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id.

Once the movant's initial burden is met, the burden shifts to the nonmoving party. Webb v. K.R. Drenth Trucking, Inc., 780 F.Supp.2d 409 (W.D.N.C. 2011). The nonmoving party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. At summary judgment, it is inappropriate for a court to weigh evidence or make credibility determinations. Id.

When considering cross-motions for summary judgment, a court evaluates each motion separately on its own merits using the standard set forth above. See Rossignol v. Voorhaar, 316 F.3d 516, 522 (4th Cir. 2003); *accord* Local 2-1971 of Pace Int'l Union v. Cooper, 364 F.Supp.2d

8

546, 554 (W.D.N.C. 2005). Both Plaintiffs and Defendant have moved for summary judgment, and the Court will analyze each motion in turn.

### III. DISCUSSION

**A. Defendant's Motion For Summary Judgment**

Defendant seeks an Order granting summary judgment in its favor through its "Notice Of Motion" (Document No. 27) and "Memorandum Of Law In Support Of Summary Judgment" (Document No. 27-1). Defendant makes four "points" in support of its motion.

**1. North Carolina Wage and Hour Act**

First, Defendant asserts that Plaintiff was not an employee covered by the North Carolina Wage and Hour Act, N.C.Gen.Stat. § 95-25.1 *et seq*. (the "Act"). (Document No. 27-1, pp.4-6). Defendant argues that the Act is inapplicable to Plaintiff because: (1) he unilaterally amended the Agreement to have his compensation paid to Church LLC, which as a matter of law is not an individual and thus cannot be an employee; and/or (2) he lacks standing because § 94-25.14 of the Act "exempts those employees working in an outside sales capacity." Id.

In response, Plaintiff contends that he never "assigned any of his employment duties or obligations" to Church LLC; he only assigned his right to receive compensation to Church LLC. (Document No. 31, pp.1-2). Defendant does not argue, or cite any authority to support, that an individual assigning a right to receive compensation is then no longer eligible to be considered an employee under the Act. Moreover, the uncontroverted facts show that Plaintiff formed the LLC at the suggestion of Defendant's president, Tom Carter, and without objection by Defendant. See Document No. 23, p.1; Document No. 27-2, p.17).. There is also no dispute that it was Plaintiff Ken Church, and not Church LLC, that worked for Defendant.

Next, Defendant argues that certain factors support a conclusion that Plaintiff "was not an

9

employee of Defendant, but an independent contractor outside sales representative." (Document No. 27-1, pp.5-6). There is no material conflict as to the facts of the employment relationship. Rather, the pertinent question is whether those facts support a finding that Plaintiff was an independent contractor or employee.

> Resolution of factors as "to whether an employment relationship or an independent contractor relationship was created" is "a question of law." Cilecek v. Inova Health System Servs., 115 F.3d 256, 261 (4th Cir. 1997). Merely because employee and independent contractor status is each supported by certain factors does not bar entry of summary judgment.

Farlow v. Wachovia Bank, 259 F.3d 309, 313 (4th Cir. 2001)

The undersigned notes that Defendant has failed to cite any authority supporting his claim that the factors he identifies show that Plaintiff was not an employee of Defendant. Id. The Court, however, observes that according to North Carolina caselaw there are generally eight factors which indicate classification as an independent contractor:

> The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

McCown v. Hines, 140 N.C.App. 440, 443 (2000) (quoting Hayes v. Elon College, 224 N.C. 11, 16 (1944). "No one factor is determinative." Id.

The undersigned finds some of the factors identified by Defendant helpful to its argument; but others actually support Plaintiff's position. (Document No. 27-1, pp.5-6). The key factors identified by Defendant include the following:

1. "Church is not referred to as an employee in the Agreement." (Document No. 27-1, p.5). This is certainly true, but this fact offers little support for a finding that Plaintiff was not an employee. Conversely, the Agreement does not identify Plaintiff as an outside sales representative or independent contractor either. (Document No. 28-1, p.19). The Agreement does refer to Plaintiff as "a contract agent tied exclusively to WHF in charge of sales and key account management . . . heavily involved in all product decisions, company direction, marketing efforts, etc." Id.

2-3. Defendant notes that Plaintiff did not have taxes withheld from his paycheck and did not "complete or submit to Defendant an Internal Revenue Service Form W-4." (Document No. 27-1, p.5). The undersigned agrees that this fact is typically indicative of an independent contractor. However, it also appears that Defendant failed to submit a 1099 form. See Farlow v. Wachovia Bank, 259 F.3d 309, 312 (4th Cir. 2001) ("Form 1099 is used for reporting the income of non-employees, and the W-2 form is used for reporting the income of employees.")

Plaintiff argues that this factor is not determinative, and that in its assertion Defendant actually admits that Plaintiff was "paid a guaranteed and regular wage." (Document No. 31, p.3). Plaintiff further states that Defendant "glossed over" the equally important factor of whether Plaintiff was doing a specified piece of work at a fixed price, a lump sum, or on a quantitative basis. Id.

4. "Church admitted . . . that based on his experience an 'independent contractor was responsible for his own expenses, whereas an employee benefitted from company benefits and office space and equipment....'" (Document No. 27-1, p.5). The uncontroverted evidence, including the Agreement itself, shows that Defendant did reimburse Plaintiff's expenses, supplied him an office, and even provided business cards. See (Document No. 28-1, p.19; Document No. 23; Document No. 28-2, p.5; Document No. 27-2, p.27); see also, Farlow, 259 F.3d at 314 (business cards are

"identifying marks that would normally be provided to employees"). This factor favors a finding that Church was an employee of HFI.

5. "Church paid for his own health care and disability insurance." (Document No. 27-1, p.5). While correct, this factor is mitigated by the undisputed fact that part of Plaintiff guaranteed compensation was to receive an "additional health insurance/disability payment of 12,000 annually to be paid 1,000.00 per month for 18 months." (Document No. 28-1, p.19).

6. "Church traveled extensively for Defendant outside North Carolina on sales business." (Document No. 27-1, pp.5-6). Defendant offers no other comment how this factor supports its position. The record also shows that Defendant did at least some travel for management level business meetings. (Document No. 27-2, pp.26-27). For example, Plaintiff traveled to New York to meet with Defendant's owner, David Li, and discuss changes to the furniture management organization. Id.

7. "Church did not have an office at Defendant's factory in Taylorsville, North Carolina." (Document No. 27-1, p.6). Again, this factor is accurate, but of minimal value to Defendant. The undisputed evidence is that Plaintiff worked at an office in Hickory, North Carolina, about twenty miles from Taylorsville, at the instruction of Carter, which was provided by and at least partially paid for by Defendant. Moreover, the Agreement provided that "[a]n office (when we lease/purchase building) will be supplied to you by ADF." (Document No. 28-1, p.19).

8. From January 2009 through February 2010, Church was paid solely sales commissions. Id. This factor is also not disputed, and is, at least in part, the basis for Plaintiffs' lawsuit.

9. "Church incurred and was reimbursed for his travel expenses as an outside salesman." Id. As noted above, Plaintiff incurred and was reimbursed for all his expenses incurred on behalf of HFI or conducting HFI business. See (Document No. 28-2, p.5).

12

The undersigned is not persuaded that the assignment of Plaintiff's compensation to an LLC, or its list of factors, support a finding that Plaintiff was not covered by the Act. On the whole, the factors Defendant chooses to focus on actually tend to support a finding that Plaintiff was an employee. Therefore, Defendant's first "point" does not support a judgment that Plaintiff was not covered by the North Carolina Wage and Hour Act. To the contrary, Defendant's factors, the factors discussed in McCown, along with "the parties' beliefs about their relationship, the economic realities of the relationship, and the extent of Defendant's control over Plaintiff" support a finding that Plaintiff was an employee of Defendant. Morrison v. Saco Industries, Inc., 2997 WL 148926 at *3 (M.D.N.C. Jan. 16, 2007) (citing Farlow, 259 F.3d at 313-16).

In Morrison, the Court concluded that there was a genuine dispute of material fact that precluded summary judgment. Id. In Farlow, however, the Fourth Circuit opined that

> The facts with respect to the employment relationship are not materially in conflict. Resolution of factors as "to whether an employment relationship or an independent contractor relationship was created" is "a question of law." Cilecek v. Inova Health System Servs., 115 F.3d 256, 261 (4th Cir. 1997). Merely because employee and independent contractor status is each supported by certain factors does not bar entry of summary judgment. Whether a person is an employee depends on the common law of agency definition of employee. Cilecek, 115 F.3d at 259, 261-63.

Farlow, 259 F.3d at 313. The Fourth Circuit explained its conclusion that the plaintiff was an independent contractor, rather than an employee of the defendant as follows:

> Upon review of all of these factors, it is clear that, although some may weigh in favor of a finding that Farlow was an employee, the vast majority of them, including the most significant, weigh in favor of the conclusion that Farlow was an independent contractor. We place greater weight on: 1) the financial relationship between the parties in which she was paid not a salary but only in response to her bills, for services actually rendered; 2) the financial relationship between the parties in which Wachovia did not withhold or pay any taxes that are incident to an employment relationship; 3) the financial relationship

13

between the parties in which Farlow did not receive employee benefits such as medical and life insurance; 4) Farlow's filing of income tax returns under a self-employed status; 5) the express intent of the parties as indicated in the contract Farlow signed labeling her as an independent contractor; 6) that Farlow did not work exclusively for Wachovia during her working relationship with it; and (7) that Wachovia exercised no control over the manner of her work. These factors demonstrate that Farlow exercised independence from Wachovia.

Id. at 316.

Here, the undersigned is particularly persuaded by depositions of record, as well as the affidavits of Church and Brown, that show that Plaintiff believed he was an employee of HFI and that he was treated as such by Defendant. Although Plaintiff did seem to have a fair amount of autonomy, it is clear in the Agreement and elsewhere, that he had to have approval of Carter or others regarding personnel decisions. (Document No. 28-1, p.19). Furthermore, the undisputed facts indicate that Plaintiff worked closely with Carter and Brown on many aspects of Defendant's business, and that his duties were more akin to an upper management employee than an outside sales agent. See (Document No. 28-1, p.7) (Carter testified that he hired Church as a "higher level employee") and (Document No. 28-4, p.1) (Brown stated that she "treated him like a management level employee").

Additionally, Plaintiff went to work exclusively for Defendant in exchange for a guaranteed monthly salary for 18 months. (Document No. 28-1, p.19). Plaintiff asserts, and there is no evidence to the contrary, that he fulfilled his commitment. (Document No. 27-2, p.32); see also (Document No. 27-2, p.13) ("I was contracted for a period of 18 months to WHF, which meant I could not sell merchandise, work for other competitive companies during that 18-month period of time and still receive their payment"). After 18 months, Plaintiff became general manager for the Lake Hickory Country Club, but apparently continued to work on a few projects for Defendant. (Document No. 27-2, pp.32-33).

14

The undersigned concludes that Plaintiff should be regarded as an employee pursuant to North Carolina Wage and Hour Act.

### 2. Terminable Agreement

In its next point, Defendant asserts that the parties' relationship was terminable at the will of Defendant as of December 31, 2008.  (Document No. 27-1, p.6).  Defendant relies on Freeman v. Hardee's Food Systems, Inc., 3 N.C. App. 435 (1969), to support its contention that the Agreement here was terminable at will because "no specific duration of employment was set out." (Document No. 27-1, pp.6-7).  Defendant acknowledges it agreed to pay Plaintiff $11,000 per month for 18 months, but concludes that because the Agreement as a whole is "void of any terms with respect to the duration or termination of the Agreement" Defendant could terminate the Agreement  at will. (Document No. 27-1, p.7).

In Freeman, the Court of Appeals held that "[a]n employment contract, such as the one in the instant case, where the compensation is specified at a rate per year, month, week or day, but where the duration of the contract is not specified, is for an indefinite period." Freeman, 3 N.C.App. at 437-38.  The plaintiff in Freeman was promised a weekly salary rate for his first two years, but "thereafter, all raises would be based upon merit and length of service."  Id. at 436.

In this case, although the compensation is specified at a rate per month, the Agreement clearly stated that such monthly rate is "for a period of 18 months."  (Document No. 28-1, p.10).  Unlike Freeman, there is no indication in the Agreement that any salary would be paid after 18 months.  At most, the Agreement anticipates that Plaintiff might continue to receive commissions as long-term compensation.  Id.  The undersigned does not, therefore, find that the parties' contract here was for an "indefinite period."  Moreover, Defendant has stipulated to the fact that it agreed to pay Plaintiff "a **guaranteed compensation** of $10,000.00 per month, plus $1,000.00 a month for health

15

insurance/disability **for 18 months**." (Document No. 23, p.1) (emphasis added).

Defendant argues that Church could be terminated at any time, and that it was within its rights to terminate the Agreement and retain Church under a new agreement. (Document No. 27-1, p.7). Defendant's motion suggests that it exercised its right to terminate the Agreement at will and pay Plaintiff strictly on commission as an independent sales person. Id. However, Defendant's position contradicts its contention that "Church and Defendant orally changed the Agreement...." (Document No. 27-1, p.2). Moreover, Defendant's argument is inconsistent with the sworn affidavit of Jean Brown, its then Chief Operating Officer, whose affidavit supports a finding that Plaintiff continued working for Defendant as "a management level employee" with duties beyond sales and marketing activities. (Document No. 28-4). Brown also believed that Plaintiff continued to be entitled to his guaranteed salary from January 2009 through July 2009. Id.

There is simply no evidence that the parties reached a new agreement. Defendant fails to even allege when, where, why, who, or specifically how the parties orally changed the Agreement. Defendant asserts that the Agreement was terminable at will as of December 31, 2008; however, Defendant fails to point to any evidence regarding the significance of that date. In addition, *even if* the relationship was terminable at will, Defendant has presented no evidence that it terminated the relationship. Instead, it appears that Defendant simply stopped paying the "guaranteed compensation" of $11,000.00 per month to Plaintiff starting in or about January 2009.

Finally, the undersigned notes that the North Carolina Wage and Hour Act requires employers to "[n]otify employees, in writing or through a posted notice maintained in a place accessible to its employees, at least 24 hours prior to any changes in promised wages." N.C.Gen.Stat. § 95-25.13(3). As noted above, the undersigned finds the Act applicable to this employment relationship, and as further noted, there is no evidence that Defendant provided any written or posted notice to Plaintiff

16

about a change to his promised wages. Therefore, Defendant's conduct violated the Act and constituted a breach of contract.

### 3. Agreement Modification

Defendant next re-asserts that the parties modified their Agreement. (Document No. 27-1, pp.7-8). In support, Defendant suggests that Plaintiff accepted a modification as of January 1, 2009, because he worked on a commission basis only from then on. Id. There is no dispute that Plaintiff continued to accept commission payments. As Defendant notes, Plaintiff testified that after January 2009, he could not just walk away from what he had put his heart and soul into. Id. Defendant fails to add that Plaintiff contends that Brown kept telling him not to worry, it would get worked out, apparently referring to his guaranteed monthly compensation. (Document No. 27-2).

Brown's affidavit supports Plaintiffs. (Document No. 28-4). "During the approximate 6 months I worked with Ken Church on a full time basis, I was aware he was not being paid the guaranteed salary that HFI agreed to pay him. I attempted on several occasions to try to get him paid, but I was unsuccessful." Id. The undisputed evidence supports Plaintiff's position that he continued working for Defendant with the belief or hope that the dispute over his wages would be resolved. This position is consistent with Brown's affidavit, and Defendant has failed to produce any evidence to the contrary. See (Document 28-4).

Although there is evidence that Defendant was *interested* in modifying the Agreement, there is no evidence that a new deal was ever agreed on or even presented to Plaintiff. (Document No. 27-2, pp.23-27, 33). Defendant's lack of evidence belies its contention that there was a new agreement.

### 4. Payment Due

In its final point, Defendant asserts that Plaintiffs are not due unpaid salary or commissions for any period under the Agreement. (Document No. 27-1, pp.8-9). Defendant acknowledges that

17

it paid Plaintiff $11,000.00 a month for 12 months "before the guarantee term of the Agreement was mutually terminated by Church and Defendant." Id. Thus, Defendant again references a new agreement purportedly reached by the parties, not a termination at will, but fails to offer any evidence or allegation supporting such a claim.

The crux of Defendant's final argument is that it paid Plaintiff's commissions through January 2010 for all sales made by Church alone, and that it does not owe Plaintiffs payment of any other commissions. (Document No. 27-1, p.9-10). Defendant contends that Plaintiffs did not hire any key account executives during the relevant time period involved, January 2009 through January 2010. Id. Defendant points to "Plaintiffs' Responses to Defendant's First Request To Produce" and argues that Plaintiffs identified some sales people hired, but "failed to identify the name of a single key account executive and failed to provide the addresses and contact numbers" of any of the people hired by Plaintiffs. Id. As Defendant notes, Plaintiff later testified in his deposition that at least three of the "sales people" he hired were key account executives. Id. (citing Document No. 27-2, p.15). Plaintiff then testified that there was probably no difference between an individual sales representative and a key account executive. Id.

Defendant further notes that the parties' Agreement only refers to "key account executives." (Document No. 27-1, p.10) (citing Document No. 28-1, p.19). Defendant argues that Plaintiff should be barred from now alleging he is entitled to commissions from three key account executives. Id. Defendant also contends that even if Plaintiff did hire key account executives, he faces "the onerous burden to prove the profitability of each such account and the agreed upon percentage thereof." Id. Defendant concludes that Plaintiff cannot prove the profitability of the account(s) as required by the Agreement, and therefore summary judgment for Defendant is appropriate. Id.

In his response, Plaintiff only addresses the issue of whether he has the burden of establishing

18

the profitability of the sales to establish the percentage of the commissions. (Document No. 31, p.5). Plaintiff provides that all sales were made at the standard price and commissions are owed based on the higher percentage (1%). Id. (citing Document No. 30). Plaintiff makes no argument that he hired "key account executives" pursuant to the Agreement, or that he is owed commissions based on the sales he made. Id.

Defendant's reply reiterates that Plaintiffs are not claiming they are owed any commissions based on sales by Church. (Document No. 32, p.4). In addition, Defendant asserts that Plaintiffs' apparent claim for "override commissions on sales made by other sales representatives of Defendant" must fail. (Document No. 32, p.5). Defendant argues that the Agreement that provided for override commissions was terminated as of December 31, 2008, but even if it were applicable, it only provides for an override commission "for any key account executive he hires based on the profitability of the account." Id. Finally, Defendant essentially argues that even if override commissions were owed, Plaintiffs' computations of the amount(s) owed is erroneous.

### 5. Conclusion

Based on the foregoing, the Court cannot find that Defendant is entitled to summary judgment. Specifically, the undersigned concludes that the uncontroverted facts support a finding that Plaintiff Ken E. Church's employment with Defendant is covered by the North Carolina Wage and Hour Act, and that the parties had a contract for guaranteed compensation for 18 months that was breached by Defendant. In particular, Defendant has rested on the mere allegation that there was a new agreement between the parties sometime prior to January 1, 2009, without referring to anything in the pleadings, depositions, answers to interrogatories, the affidavits, or elsewhere, that supports such an allegation. The Court is not persuaded that Defendant's failure/refusal to pay the guaranteed compensation for six months is evidence that the parties reached a new deal. Defendant's motion for

19

summary judgment as to its position that there was no employer-employee relationship, and no breach of contract, will be <u>denied</u>.

As to Defendant's claim that it does not owe any commissions, the undersigned finds the factual record far less clear on this issue and is unable to conclude that there is no genuine issue of material fact. As such, Defendant's motion for summary judgment will be denied.

**B. Plaintiffs' Motion For Summary Judgement**

"Plaintiffs' Motion For Summary Judgment" (Document No. 28) contends that Plaintiffs are "entitled to summary judgment as to all claims contained in the Complaint as a matter of law." Plaintiffs rely on the pleadings, discovery responses, deposition transcript of Tom Carter, and the affidavits of Jean Brown and Ken E. Church to support their motion. (Document No. 28, p.1).

Plaintiffs first argue that Church was an employee of HFI. (Document No. 29, pp.6-10). For reasons discussed above in considering Defendant's motion, the undersigned agrees that Plaintiff was an employee and that he is entitled to the protections afforded by the North Carolina Wage and Hour Act.

Next, Plaintiff asserts that pursuant to the Act, Defendant was required to notify Plaintiff in writing of any changes in his promised wages. (Document No. 29, p.10) ( citing N.C.Gen.Stat. § 95-25.13) and (<u>Murphy v. First Union National Bank</u>, 152 N.C.App. 205, 208 (2002). Plaintiff further asserts that Church was never provided with anything in writing which notified him that the terms of his compensation were being changed. <u>Id.</u> To date, Defendant has failed to produce, or even allege, any evidence that it gave notice to Plaintiffs, in writing or otherwise, that Plaintiff was being terminated or that his compensation was being modified. As noted above, Defendant concedes that it stopped paying Plaintiff's guaranteed compensation under the Agreement, but kept paying commissions.

20

The elements of a claim for breach of contract are the existence of a valid contract and a breach of the terms of that contract. See Johnson v. Colonial Life & Accident Ins. Co., 173 N.C.App. 365, 369 (2005). The intentions of the parties may be discerned from both their writings and their actions. Arndt v. First Union Nat'l Bank, 170 N.C.App. 518, 522, 613 S.E.2d 274, 278 (2005). To be enforceable, the terms of a contract must be sufficiently definite and certain. Lassiter v. Bank of N.C., 146 N.C.App. 264, 269 (2001). A contract leaving material portions open for future agreement is nugatory and void for indefiniteness. Boyce v. McMahan, 285 N.C. 730, 734 (1974). In addition to setting forth its terms with the requisite level of certainty, to be enforceable a contract must contain an expression of mutual assent, or a meeting of the minds. See Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc., 243 F.Supp.2d 386, 400 (M.D.N.C.2003) ("There is no contract unless the parties thereto assent, and they must assent to the same thing, in the same sense.").

Cole v. Champion Enterprises, Inc., 496 F.Supp.2d 613, 621-22 (M.D.N.C. 2007)(internal citations omitted).

The undersigned is convinced that uncontroverted evidence supports a finding that Plaintiff is entitled to recover unpaid wages pursuant to the Act and Defendant's breach of the parties' Agreement. Based on the foregoing, and including the analysis of Defendant's motion, the Court will therefore grant Plaintiffs' motion for summary judgment as to the claims for breach of contract and violation of the North Carolina Wage and Hour Act.

Finally, Plaintiffs' memorandum in support of the motion for summary judgment argues that Plaintiff "is owed an additional amount of $24,467.50 for override commissions on sales made by salesmen on behalf of Westgate and direct sales he made for which he was not compensated." (Document No. 29, p.11). As was true regarding Defendant's motion, Plaintiffs fail to specifically assert that Church hired "key account executives" pursuant to the Agreement. Moreover, Plaintiffs have failed to provide sufficient and undisputed evidence that would allow this Court to conclude that he is entitled to an award of commissions in the amount he now claims.

As such, and as noted above, there appears to be a genuine issue of material fact on the issue of commissions that is now ripe for trial. Therefore, Plaintiffs' motion for summary judgment will be <u>granted</u> as to claims for breach of contract and violation of the North Carolina Wage and Hour Act, but <u>denied</u> to the extent Plaintiffs seek payment of unpaid commissions.

## IV. CONCLUSION

The Court finds that the North Carolina Wage and Hour Act is applicable to the underlying employment relationship and that Defendant breached the parties' Agreement. At minimum, Defendant is liable to Plaintiff for the six (6) months of guaranteed compensation of $11,000.00 per month it failed to pay Plaintiff.

As discussed above, the Court finds that there is a remaining genuine issue of material fact as to whether Plaintiff hired "key account executives" pursuant to the Agreement, and if so, whether Plaintiff is owed any commission payments based on either Plaintiff's or the key account executives' sales activity for Defendant. At trial, if one is ultimately required, the Court will hear arguments regarding the issue of commissions, and will further consider Plaintiffs' requests for liquidated damages and attorney's fees.

**IT IS, THEREFORE, ORDERED** that Defendant's "Notice Of Motion [For Summary Judgment]" (Document No. 27) is **DENIED**.

**IT IS FURTHER ORDERED** that "Plaintiffs' Motion For Summary Judgment" (Document No. 28) is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that unless the parties file a Notice Of Settlement or Stipulation Of Dismissal on or before **July 27, 2012**, counsel for the parties shall appear for a Final Pretrial Conference on **July 31, 2012**, and a trial on any remaining issues in this matter on **August 6, 2012**. The parties are directed to make the necessary preparations and filings in accordance with

the "Pretrial Order And Case Management Plan" (Document No. 7).

**SO ORDERED**.

Signed: July 19, 2012

David C. Keesler
United States Magistrate Judge

23